# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 6070 | **DATE** | 9/25/2002 |
| **CASE TITLE** | Angela Lekkas, et al. vs. Mitsubishi Motors Corp., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Mitsubishi's Motion for Summary Judgment [46-1] is granted as to the plaintiff's claims of defective design and the uncrashworthiness of the vehicle's roof. The motion is denied as to plaintiff's claim of defective design relating to the vehicle's propensity to roll over. Status hearing before Magistrate Judge Nolan set for October 22, 2002 at 9:00 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 3 number of notices | Document Number |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | SEP 26 2002 date docketed | 64 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| KJ/c courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |


ANGELA LEKKAS, Special Administrator )
of the Estate of ANTONIOS LEKKAS, )
ANGELA LEKKAS, Individually, and )
ANGELA LEKKAS, as Mother and Next )
Friend of AMANDA LEKKAS, a Minor, )
) No. 97 C 6070
     Plaintiffs, )
)
v. ) Magistrate Judge Nan R. Nolan
)
MITSUBISHI MOTORS CORP., a )
corporation, and MITSUBISHI MOTOR )
SALES OF AMERICA, a California )
corporation, )
)
     Defendants. )
)

## MEMORANDUM OPINION AND ORDER

    This products liability case arises from an automobile accident that killed Antonios Lekkas, the husband of the plaintiff Angela Lekkas. The plaintiff claims that the accident and her husband's death were caused by the defective design of the Lekkas's Mitsubishi Montero, which was manufactured and/or distributed by Defendants Mitsubishi Motors Corp. and Mitsubishi Motor Sales of America (collectively "Mitsubishi").

    The Lekkas's vehicle was destroyed by the plaintiff's automobile insurance company a few months after the accident, before the Lekkas's filed the present lawsuit. The matter is now before the Court on Defendants' Motion for Summary Judgment or Dismissal Based on Spoliation.[1] The

---

[1]On January 11, 2000, Mitsubishi filed its first motion for summary judgment. On August 15, 2000, the Court granted the plaintiff's motion pursuant to Federal Rule of Civil Procedure 56(f) to compel discovery prior to responding to defendants' motion for summary judgment and held the defendants' motion for summary judgment in abeyance pending the close of discovery. The present motion was filed after the parties had an opportunity to obtain expert discovery related to the accident and Antonios's injuries.

64

parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

For the reasons that follow, Mitsubishi's motion is GRANTED IN PART and DENIED IN PART.

## UNDISPUTED FACTS

Plaintiff Angela Lekkas's husband, Antonios Lekkas ("Antonios"), was killed in a single-car rollover accident on April 8, 1995. (Defs.' St. Facts ¶6.) Antonios, the plaintiff, and their daughter Amanda were riding in a 1994 Mitsubishi Montero SUV southbound on Interstate 55 in Illinois when the rollover occurred. (*Id.*) Antonios was thrown from the vehicle and died of severe crushing injuries; the plaintiff and Amanda sustained only minor injuries. (*Id.* Ex. 9.)

On the day of the accident, the vehicle was towed to a service station near the accident site. (*Id.* ¶13.) Shortly thereafter, Nicholas Black, an attorney and friend of the Lekkas family, advised the plaintiff to take photographs of the vehicle in case of a products liability case. (*Id.* ¶14.) Black then contacted two or three attorneys to see if they knew anything about products liability law. (Pl.'s Resp. to St. Facts ¶15.) Black also directed State Farm, the Lekkas's auto insurance carrier, to hold the vehicle pending further investigation. (Defs.' St. Facts ¶17.) On May 10, 1995, State Farm authorized Bill Smith Auto Parts ("Smith") to pick up the vehicle from the service station. (*Id.* ¶16, Ex. 9.) On or around the same day, State Farm notified Black that the vehicle had been moved to Smith. (*Id.* Ex. 9.) On June 12, 1995,[2] Smith advised State Farm that the vehicle had been at the facility for more than thirty days, but Smith would continue to hold the vehicle for no additional charge if State Farm wished. (*Id.* ¶20.)

On July 20, 1995, State Farm sent Black a letter advising that State Farm "will be proceeding with the disposal of this salvage in the next two weeks." (Pl.'s Resp. to St. Facts Ex. 4.) On August

---

[2]The defendants' statement of facts and the plaintiff's response list the date as June 14, 1995, but the facsimile at issue is dated June 12, 1995.

30, 1995, an internal State Farm memorandum advised "OK to dispose of salvage," meaning the Lekkases' vehicle. (Defs.' St. Facts Ex. 14.) The vehicle was then sold to Smith as salvage. (*Id.* ¶26.)

The plaintiff's present counsel learned the vehicle had been destroyed after sending a letter to State Farm on October 30, 1995, asking for a copy of the complete accident file. (*Id.* ¶27.) On April 2, 1997, the plaintiff filed her complaint, which alleges design and manufacturing defects. Mitsubishi learned in late 1998 that the vehicle was not in the plaintiff's possession or control when the plaintiff stated in an interrogatory answer that "Plaintiff does not have custody of the vehicle and does not presently know who has custody of the vehicle."

The parties disagree about cause of rollover and the cause of Antonios's fatal injuries. The plaintiff contends that the vehicle's defective design makes it prone to rollover accidents. The plaintiff also claims that the roof of the Montero was defectively designed and not crashworthy. The defendant argues that the vehicle's design is not defective, and that the rollover was the result of driver error, i.e., Antonios oversteered the vehicle after it veered off the road. The defendant also argues that that Antonios's injuries occurred after he was ejected from the vehicle, not from the roof crush.

The plaintiff's amended complaint claims that the vehicle was unreasonably dangerous for four reasons: (1) it had an unreasonable propensity to roll over due to its steering and handling characteristics, e.g., center of gravity, suspension system, and wheel base; (2) its tires and components were unsafe, unsuitable, and unreasonably dangerous; (3) it failed to prevent ejection of the occupants; and (4) it was not crashworthy because its roof was crushed in the rollover.

The plaintiff argues that the fatal injuries were caused by either the roof of the vehicle, which was crushed in the rollover, and/or his contact with the outside of the car and the pavement. The defendant claims that the decedent was not wearing a seat belt, and he was crushed between the car and the pavement when he was coming out of the car as it was rolling over.

## DISCUSSION

When a defendant seeks dismissal of a case as a sanction for spoliation, the court must first determine if the destruction of evidence warrants the imposition of any discovery sanctions. If the court finds that sanctions are warranted, it must then determine what sanctions should be imposed. Sanctions for spoliation of evidence can include dismissal of the complaint or an order barring the plaintiff from introducing facts related to the destroyed evidence. If the court bars evidence, summary judgment may be appropriate in cases where the plaintiff cannot prove his case without the prohibited evidence.

### A.   SANCTIONS FOR SPOLIATION

In diversity cases, Illinois law governs a party's duty to preserve evidence. *State Farm Fire & Cas. Co. v. Frigidaire*, 146 F.R.D. 160, 162 & n.1 (N.D. Ill. 1992) (noting that Fed. R. Civ. P. 37(b)(2)(C) is not broad enough to resolve questions about a party's pre-suit duty to preserve evidence).

Sanctions for discovery noncompliance may include barring the party from maintaining a particular claim; barring the introduction of evidence related to the spoliated item; or striking a portion of a pleading related to the issue. Ill. Sup. Ct. R. 219(c). While the Illinois Supreme Court has not yet addressed the issue, several Illinois appellate courts have held that the destruction of the product in a products liability case may be sanctioned as discovery noncompliance. *See, e.g., Shelbyville Mut. Ins. Co. v. Sunbeam Leisure Prods. Co.*, 634 N.E.2d 1319 (Ill. App. Ct. 1994); *H & H Sand & Gravel Haulers Co. v. Coyne Cylinder Co.*, 632 N.E.2d 697 (Ill. App. Ct. 1994) *American Family Ins. Co. v. Village Pontiac GMC, Inc.*, 585 N.E.2d 1115 (Ill. App. Ct. 1992); *Graves v. Daley*, 526 N.E.2d 679 (Ill. App. Ct. 1988). Whether to impose sanctions for spoliation of evidence is decided on a case by case basis. *Iowa Ham Canning, Inc. v. Handtmann, Inc.*, 870 F. Supp. 238, 243 (N.D. Ill. 1994).

A party may be sanctioned for spoliation even if there is no court order requiring the parties to maintain evidence or if the lawsuit was not filed at the time of destruction. *See Farley Metals, Inc. v. Barber Colman Co.*, 645 N.E.2d 964, 969 (Ill. App. Ct. 1995); *Shelbyville Mut. Ins.*, 634 N.E.2d at 1323; *Village Pontiac*, 585 N.E.2d at 1118; *see also Graves*, 526 N.E.2d at 681 ("The plaintiffs are not free to destroy crucial evidence simply because a court order was not issued to preserve the evidence.").

A defendant seeking discovery sanctions for a plaintiff's spoliation of evidence in a products liability case must prove (1) at the time the product was destroyed, the plaintiff anticipated a products liability lawsuit and therefore knew or should have known that the product would be material evidence in the case; and (2) the absence of the product is prejudicial to the defendant. *Iowa Ham Canning*, 870 F. Supp. at 242. The defendant does not need to show that the plaintiff intentionally destroyed or discarded the product. *Id.*

### 1. *Material Evidence*

A plaintiff is not charged with knowing a product would be material evidence if there was merely a potential for litigation when the product was spoliated; litigation must have been contemplated or anticipated. *See id.* at 245 (noting that "[t]he potential for litigation would arise at the very moment of injury, but the injured party may not necessarily contemplate filing a lawsuit"). In order to determine whether litigation was contemplated at the time the product was destroyed, "Illinois law requires that the court examine the conduct of the plaintiff after the injury." *Id.* at 244.

Mitsubishi argues that the plaintiff had a duty to preserve evidence, that she failed to fulfill her obligation, and that the failure had prejudiced Mitsubishi, thus warranting an award of summary judgment. Mitsubishi further argues that while it is not necessary to find the plaintiff acted with willfulness or fault, the vehicle in this case was destroyed with the knowledge and participation of the plaintiff's counsel.[3] Specifically, Mitsubishi claims that the plaintiff knew the vehicle should

---

[3]Mitsubishi also argues that the plaintiff had actual notice in the form of a May 24, 1996 letter from State Farm regarding the salvage. The Court does not address the issue of actual notice,

be preserved, did in fact attempt to preserve the vehicle immediately after the accident, but took no affirmative steps to stop the destruction when State Farm gave notice of the impending salvage.

The plaintiff maintains that she did not contemplate litigation because she did not know about products liability law; that Black's actions cannot be imputed to her because he was acting as a family friend, not as her attorney; that she did not personally receive notice of the salvage, and neither she nor Black authorized the destruction of the vehicle; that the plaintiff has obtained no unfair advantage over the defendants; and that Mitsubishi is not prejudiced in putting on a defense, because the case is based on a design defect.

The Court concludes that when the Montero was sold for salvage in August 1994, litigation was contemplated, and the plaintiff either knew or should have known that the vehicle would be material evidence in a lawsuit. First, even though attorney Black had not identified a basis for a claim against Mitsubishi, his actions show that litigation was contemplated. He recommended to the plaintiff that she retain an attorney who specializes in products liability litigation. And although his efforts were limited at best, Black did try to locate an attorney for the plaintiff and investigate a possible cause of action. Black's actions were those of one who anticipated litigation. Furthermore, by initially asking State Farm to maintain the vehicle, Black showed that he knew the vehicle had potential evidentiary value. Nothing in the record establishes that Black later changed his mind. Finally, there is evidence in the record that Black was informed by letter that the vehicle was going to be salvaged. *See Farley Metals*, 645 N.E.2d at 968 ("[W]hile there was no indication that plaintiff intentionally destroyed evidence, it was on notice that destruction was likely.").

---

since the letter was sent nine months after the vehicle was destroyed. It is surprising that the defendants did not notice this obvious error, particularly considering that Mitsubishi considered the letter important enough to photographically reproduce it in the Reply Memorandum. The Court will nevertheless treat this as a mistake on the defendants' part and not an attempt to deliberately mislead the Court.

Because Black was acting as the plaintiff's attorney or agent at the relevant time, his actions are imputed to the plaintiff.[4] *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 & n.10 (1962); *Inryco, Inc. v. Metropolitan Eng'g Co., Inc.*, 708 F.2d 1225, 1233-34 (7th Cir. 1983). The Court also notes that the plaintiff retained a personal injury firm less than two months after the vehicle was salvaged.[5] The plaintiff's actions therefore demonstrate that she contemplated litigation by the end of August when the Montero was destroyed.

### 2. *Prejudice to the Defendants*

Even if discovery noncompliance occurs, sanctions should not be imposed unless the spoliation will also result in prejudice to the defendant. *See H & H Sand*, 632 N.E.2d at 705. Mitsubishi argues it is prejudiced by the loss of the vehicle because (1) its experts cannot confirm their opinions regarding the cause of the rollover and the cause of Antonios's fatal injuries; (2) the plaintiff will be able to change her theories with impunity, since she will not be limited by physical evidence; (3) Mitsubishi cannot investigate alternate causes of the accident; and (4) the other evidence in the case is not sufficient to allow Mitsubishi to put on a defense. The plaintiff responds that Mitsubishi will not be prejudiced because it can use an exemplar vehicle and other evidence, such as photographs, measurements, witness testimony, and vehicle design information. The plaintiff also argues that the vehicle would not necessarily contain evidence favorable to the defendants.

Destruction of the product in a products liability case is prejudicial to the defendant if "the unavailability gives the plaintiff an unfair advantage over the defendant." *Iowa Ham Canning*, 870 F. Supp. at 243. For example, prejudice exists where the loss of the product leaves a defendant

---

[4]The plaintiff's claim that Black was not acting as her attorney is not persuasive, given that Black held himself out to the insurance company as her attorney, gave the plaintiff legal advice, and sent and received official correspondence on her behalf. It is irrelevant that Black was not experienced in personal injury product liability law or officially retained as the plaintiff's attorney, and the plaintiff offers no contrary authority.

[5]The exact date she contacted the law firm is not clear from the record. However, she had obtained representation by October 30, 1995, two months after the vehicle was destroyed. (Defs.' St. Facts ¶27.)

without a viable defense. *See, e.g., Allstate Ins. Co. v. Sunbeam Corp.*, 53 F.3d 804, 807 (7th Cir. 1995); *Shelbyville*, 634 N.E.2d at 1324. Prejudice has also been found where the plaintiff and/or the plaintiff's experts had an opportunity to examine the item, but the defendant did not. *See, e.g., Thomas v. Bombardier-Rotax Motorenfabrik, GmbH*, 909 F. Supp. 585, 588 (N.D. Ill. 1996); *Shimanovsky v. General Motors Corp.*, 648 N.E.2d 91, 95-96 (Ill. App. Ct. 1995). *Graves*, 526 N.E.2d at 680-81; *see also Village Pontiac*, 585 N.E.2d at 1118 ("As a matter of sound public policy, an expert should not be permitted intentionally or negligently to destroy such evidence and then substitute his or her own description of it."); *cf. Iowa Ham Canning*, 870 F. Supp. at 245 (finding no unfair advantage because, among other things, the plaintiff had not yet retained an expert or done any testing before the product was destroyed).

In determining whether discovery noncompliance is unreasonable, and therefore sanctionable, "a court may consider the importance of the information to be produced." *H & H Sand*, 632 N.E.2d at 701 (citation omitted); *accord Shelbyville Mut. Ins.*, 634 N.E.2d at 1323; *see also Ralston v. Casanova*, 473 N.E.2d 444, 449 (Ill. App. Ct. 1984) ("While [the elements of a strict liability claim] may be proved inferentially by either direct or circumstantial evidence . . . it is clear that preservation of the allegedly defective product, if possible, is of the utmost importance in both proving and defending against a strict liability action.") (citation omitted).

As will be more fully discussed in the following section, the Court finds that Mitsubishi has suffered prejudice, and sanctions are warranted in this case.

### 3. *Sanctions*

After determining that discovery noncompliance is sanctionable, a court must then determine the proper sanction to be imposed. "It has been held that a 'just' sanction pursuant to [Illinois] Supreme Court Rule 219(c) is one which, to the degree possible, ensures both discovery and a trial on the merits." *Shimanovsky*, 648 N.E.2d at 96.

In analyzing the severity of sanctions, a court should consider the conduct giving rise to the sanctions, including the parties' good faith and/or diligence, and prejudicial effect of the conduct on the parties. *See id.*; *H & H Sand*, 632 N.E.2d at 705. In deciding whether to impose a sanction of excluding evidence or testimony, a court should consider factors such as the surprise to the adverse party; the prejudicial effect of the evidence; and the diligence of the adverse party. *See H & H Sand*, 632 N.E.2d at 701-02.

The defendants correctly point out that the sanction of outright dismissal may be imposed even in the absence of intent or fault, if the destroyed evidence was sufficiently important. *See Farley Metals*, 645 N.E.2d at 968. However, dismissal is generally awarded only when there is egregious noncompliance with discovery rules or when lesser sanctions have failed. *See Marrocco v. General Motors Corp.*, 966 F.2d 220, 223-24 (7th Cir. 1992) ("To be sure, a district court's discretion in sanctioning litigants is not unfettered – particularly where the draconian sanction of dismissal is imposed.").

As the Seventh Circuit has explained, "'[a] dismissal with prejudice is a harsh sanction which should usually be employed only in extreme situations, where there is a clear record of delay or *contumacious conduct*, or when other less drastic sanctions have proven unavailable.'" *Marrocco*, 966 F.2d at 224 (dismissing case where spoliation of evidence violated a pretrial order and the plaintiff's attorney suborned perjury to cover up the destruction of the product) (citation omitted) (emphasis in original); *see also Allstate Ins. Co. v. Sunbeam Corp.*, 865 F. Supp. 1267, 1279 (N.D. Ill. 1994), *affirmed by Allstate*, 53 F.3d 804 (dismissing case where the plaintiff demonstrated a "cavalier attitude" in destroying all evidence that would help the defendant analyze the cause of the accident, and the defendant "was inextricably harmed in its ability to defend the lawsuit"); *Farley Metals*, 645 N.E.2d at 971 (dismissing case where the plaintiff's conduct violated a protective order).

Similarly, dismissal may be warranted in cases where the defendant has no ability whatsoever to defend against the plaintiff's charges. *See Allstate*, 53 F.3d at 807 ("[T]he test in the present case is whether the Defendant manufacturer was deprived of the ability to establish its case."); *see also*

-9-

*H & H Sand*, 632 N.E.2d at 704 (noting that in certain cases granting the sanction of dismissal, "the plaintiffs disposed of the *entire* defective product, which was the *only* item alleged by *either party* to have caused the damage and the *sole theory* of liability") (emphasis in original).

The sanction of dismissal, however, should be used sparingly since it gives the plaintiff no chance to argue that she has a *prima facie* claim. "When a case is dismissed as a discovery sanction, ... there may be an increased probability that a trial court will fail to consider whether plaintiff can establish a claim without unfair prejudice to the defendant." *Shimanovsky*, 648 N.E.2d at 97. If, however, "the alteration or destruction of evidence does not prevent a party from establishing its case, there has been no prejudice, and sanctions which deprive the parties of a trial on the merits are inappropriate." *H & H Sand*, 632 N.E.2d at 705; *see also Farley Metals*, 645 N.E.2d at 971 (explaining that a trial on the merits was possible in *H & H Sand* because "the defendant could present a defense through the testimony of its expert, and its designers, manufacturers and installers"). Moreover, even if the plaintiff's discovery noncompliance was intentional, a court should determine "whether the imposition of less severe sanctions will promote the overriding concern for the search for truth." *Farley Metals*, 645 N.E.2d at 968.

A less severe sanction often imposed is barring evidence or testimony related to the condition of the spoliated product. *See, e.g., Ralston*, 473 N.E.2d 444. However, this can be a drastic sanction in certain cases, and courts should be reluctant to bar evidence when the practical effect is to resolve the case against the proponent of the evidence. *Shelbyville Mut. Ins.*, 634 N.E.2d at 1324; *H & H Sand*, 632 N.E.2d at 702. The effect of prejudice can also be reduced by the use of appropriate jury instructions. *See In re Quantum Chem./Lummus Crest Consol. Pretrial Proceeding*, No. 90 C 778, 1994 WL 513629, at *4 (N.D. Ill. Sept. 16, 1994); *H & H Sand*, 632 N.E.2d at 705.

Mitsubishi argues it is prejudiced by the destruction of the Montero because an examination of the vehicle could have supported its affirmative defenses and may have shown the availability of others. Specifically, Mitsubishi claims that an inspection of the vehicle could have shown after-market alteration, prior misuse, improper tire inflation, driver error, and/or other conditions that

could implicate alternate causes for the rollover. The plaintiff responds that Mitsubishi's claims of prejudice are speculative, that Mitsubishi can defend itself through the use of other evidence in the record, and that the defendants do not need the specific vehicle to defend against a design defect claim.

The plaintiff claims the Montero was defectively designed in two ways: first, the roof of the vehicle was not crashworthy; and second, the vehicle as designed has an unreasonable capacity to roll over.

### *Roof Crush*

The plaintiff's first design defect claim is that the roof was not crashworthy, because during the rollover, the roof caved into the passenger compartment more than is reasonable, and that the roof crush was a cause of Antonios's fatal injuries. In the absence of the subject vehicle, the only evidence of the roof crush is general witness descriptions and photographs of the vehicle. The amount of roof crush was not measured after the accident, and no post-accident photographs were specifically taken to illustrate the damage to the roof.

The Court concludes that Mitsubishi would be unduly prejudiced if it were forced to defend against this claim. The amount, type, cause, and location of the roof crush was not measured or documented, and circumstantial evidence of the post-accident condition of the roof is minimal to non-existent. Mitsubishi cannot show that the amount of crush damage was within normal limits and is foreclosed from defending itself against a claim that the roof was unreasonably dangerous as designed. The plaintiff is therefore barred from introducing evidence or testimony related to the crush sustained by the roof of the Lekkas's vehicle.

### *Rollover*

The plaintiff also argues that the Montero is defectively designed because it has an unreasonable propensity to roll over due to its suspension system, high center of gravity, and/or narrow wheel base. Mitsubishi claims that it cannot defend against these claims without the subject

-11-

vehicle, because it is unable to refute the plaintiff's experts or to prove that the rollover was caused by other factors, such as driver error, after-market equipment failure, or improperly inflated tires. For example, gravel embedded in a tire can be proof of oversteering, and tires that are under- or over-inflated can affect the control of the vehicle. (*See, e.g.*, Defs.' St. Facts ¶55-59.)

The Court disagrees that Mitsubishi would be unduly prejudiced in defending against the plaintiff's defective design claim as it relates to the vehicle's tendency to roll over. For the roof crush allegation, Mitsubishi could not defend against the defect claims because it was not known whether the amount of roof crush was even unreasonable. As for this allegation, however, the claimed defect is clear and undisputed: the car rolled over. Moreover, the specific design defects the plaintiff claims were the cause of the rollover, i.e., high center of gravity and suspension system, can be tested by the parties.

The defendants argue that the main issues to be decided in this case are the performance of the suspension and tires before and during the rollover; the condition of the vehicle on the day of the accident and after the accident, which would show the sequence and cause of the rollover; and the cause of Antonios's fatal injuries. The defendants have not, however, established that these issues cannot be determined without the vehicle.

Mitsubishi acknowledges that the subject vehicle is not the only evidence in this case. The parties have conducted depositions of both parties' experts, the plaintiff, and Nicholas Black. Other evidence presently available to the parties includes a police report of the accident; the testimony of third-party witnesses; and several photographs of the vehicle after the accident. Mitsubishi can inspect and test exemplar vehicles of the same design and specifications as the subject vehicle. The Montero was only about a year old when the accident occurred, so the vehicle's service record can be circumstantial evidence of after-market repair or alterations (or the lack thereof) as well as its general condition at the time of the rollover.

Mitsubishi argues, however, that it is prejudiced because without the subject vehicle, it cannot prove its alternate theories of causation or conclusively refute the plaintiff's experts' theories.

Mitsubishi does not claim that it is deprived of defenses. Indeed, even without the car, theories about the cause of the accident and Antonios's injuries can be (and have been) posited by Mitsubishi's experts, and the plaintiff's theories can be discredited.

Mitsubishi also asserts that without evidence of the vehicle to rein them in, the plaintiff's experts will be free to argue whatever theory they wish. This contention is baseless. An expert opinion is not admissible unless it is grounded in fact and based on an accepted methodology. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); Fed. R. Evid. 702. Mitsubishi will also have the opportunity to cross-examine the plaintiff's experts about their theories. *See Braverman v. Kucharik Bicycle Clothing Co.*, 678 N.E.2d 80, 85 (Ill. App. Ct. 1997). Similarly, the defendants' fears that the plaintiff's experts will be able to change their opinions repeatedly is unfounded. Mitsubishi's argument disregards the fact that issues related to discovery and the admissibility of expert testimony are governed by the Federal Rules and this Court, which will not allow the plaintiff to engage in any such gamesmanship.

Furthermore, the Montero likely would not have yielded much of the evidence Mitsubishi hoped it would, which lessens the importance of the vehicle to the defense. First, as Mitsubishi's experts have testified, physical evidence does not necessarily exist in these cases. Second, the passage of time would have obliterated other forms of physical evidence. If the vehicle had been preserved, Mitsubishi would not have been able to inspect the car until after it had been towed at least twice and sat in a salvage yard for over two years. Mitsubishi cannot seriously claim that gravel found embedded in the car's tires two years after the accident could be used as evidence that the decedent veered off the side of the road and overcorrected. Similarly, a latter-day inspection of the tires would not be useful in assessing the tire pressure at the time of the accident.[6]

---

[6]Mitsubishi's expert claims that he could approximate the tire pressure by inspecting the tires' wear patterns. It is unknown how an analysis of wear patterns would reveal an accurate estimate of the tire pressure at the time of the accident as opposed to the average pressure for the life of the tire.

-13-

Mitsubishi has not shown sufficient prejudice to warrant the severe sanction of barring evidence of design defects related to the rollover, because the vehicle is not necessary to mount a defense. The tendency of the vehicle as designed to roll over can be both proven and defended through the use of other direct and circumstantial evidence. Mitsubishi's experts were able to form definite opinions about the cause of the rollover and the decedent's injuries without inspecting or testing the subject vehicle. And even if the vehicle had been preserved, it may not have contained physical evidence at all and/or some physical evidence would have deteriorated due to the passage of time. Finally, the destruction of the vehicle was not willful or malicious, and the plaintiff is also prejudiced by the loss and has not gained an unfair advantage over the defendants.

## B.     SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the burden of proving that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." *Id.* The defendants have the burden of directing the Court "to the determinative issues and the available evidence that pertains to each." *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. In response to "a properly supported motion for summary judgment," the non-movant "must set forth specific facts

-14-

showing that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted). The non-movant, however, "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Selan*, 969 F.2d at 564 (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *cf. Wienco, Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992) (*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)) ("'Where the evidentiary matter in support of the motion [for summary judgment] does not establish the absence of a genuine issue, summary judgment must be denied *even if no opposing evidentiary matter is presented.*'") (emphasis in original).

A plaintiff may defeat a motion for summary judgment even if the allegedly defective product has been destroyed. *See Murphy v. General Motors Corp.*, 672 N.E.2d 371, 374 (Ill. App. Ct. 1996) ("'[T]he absence of the [allegedly defective] product at trial is not fatal to the plaintiff's cause.'") (citation omitted); *Braverman*, 678 N.E.2d at 83 (same). The elements of a products liability claim are that the product was unreasonably dangerous, the product was in the unreasonably dangerous condition at the time it left the manufacturer's control, and the condition of the product caused injury. *H & H Sand*, 632 N.E.2d at 706. A plaintiff may prove these elements of a *prima facie* case inferentially, based on other direct and circumstantial evidence, including expert testimony. *See Braverman*, 678 N.E.2d at 85; *H & H Sand*, 632 N.E.2d at 706.

While an expert witness's testimony "cannot be based on conjecture or speculation," an expert may, and often does, rely on circumstantial evidence to form his opinion. *Murphy*, 672 N.E.2d at 373 ("[A]n expert's testimony is but the opinion of the witness given on facts assumed to be true, and it is for the trier of fact to determine the facts.") (citations and internal quotations omitted).

### Roof Crush

As stated above, the plaintiff is barred from introducing evidence relating to the amount of crush sustained by the roof. Without that evidence, the plaintiff cannot sustain her burden of showing that the roof was in an unreasonably dangerous condition. *See Village Pontiac*, 585 N.E.2d

-15-

at 1120 (affirming summary judgment where barred evidence prevented the plaintiff from proving the product's condition caused damage).

Therefore, summary judgment is GRANTED as to the plaintiff's allegations of defective design and uncrashworthiness of the roof.

### *Rollover*

The plaintiff has sustained her burden of proving the elements of a *prima facie* case of products liability with regard to her claim that the Montero was defectively designed because it has an unreasonable propensity to roll over. Through circumstantial evidence and expert testimony, the plaintiff has presented a genuine issue of material fact that the vehicle was unreasonably dangerous as designed. The plaintiff has also offered evidence raising a genuine issue of material fact that the vehicle was in an unreasonably dangerous condition at the time it left the manufacturer's control.

The plaintiff has also made a sufficient showing that the vehicle's unreasonably dangerous condition caused Antonios's fatal injuries. In addition, the plaintiff has presented direct and circumstantial evidence that the vehicle had not been modified since its purchase a year earlier and that the accident was not caused by driver error, after-market alterations, or a failure to keep the vehicle in good working order. *See Ralston*, 473 N.E.2d at 451 (holding that when the product is unavailable in a products liability case, "plaintiff must present *some* evidence to raise a material issue as to the absence of abnormal use and the elimination of reasonable secondary causes to prove what condition the product was in when it left the defendants' control") (citations omitted) (emphasis in original).

Mitsubishi's motion for summary judgment as to the plaintiff's claims of design defect as it relates to the propensity of the vehicle to roll over is therefore DENIED.

### CONCLUSION

For the foregoing reasons, Mitsubishi's Motion for Summary Judgment is GRANTED as to the plaintiff's claims of defective design and the uncrashworthiness of the vehicle's roof.

Mitsubishi's Motion for Summary Judgment is DENIED as to plaintiff's claims of defective design relating to the vehicle's propensity to roll over.

ENTER:

Nan R. Nolan
United States Magistrate Judge

Date: SEP 2 5 2002