IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELA LEKKAS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 97 C 6070 |
| | ) |
| MITSUBISHI MOTORS CORP., et al. | ) Magistrate Judge Nan R. Nolan |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Antonios Lekkas was killed in a car accident. His estate, wife, and daughter sued Mitsubishi Motors Corporation and Mitsubishi Motor Sales of America alleging a design defect in the Lekkas's Mitsubishi Montero based on rollover propensity. Discovery is complete and the parties are preparing the final pretrial order which is due by December 2, 2005. Plaintiffs' Motion to Strike and Bar Defendants' Untimely Videotapes Prepared by Expert, Don Tandy [155-1] is pending. Plaintiffs seek an order striking the videotapes and barring any and all use, mention of, or reference to the tapes at the trial of the case. For the reasons that follow, Plaintiffs' Motion is granted.

## DISCUSSION

Plaintiffs move to strike the videotapes prepared by Don Tandy, a mechanical engineer and one of the experts designated by Defendants, on two grounds. First, Plaintiffs assert that Defendants' production of the videotapes was untimely. Second, Plaintiffs submit that the videotapes should be excluded at trial because they are prejudicial, misleading, and inaccurate. Plaintiffs' arguments have merit.

The first issue is governed by Federal Rules of Civil Procedure 26(a)(2) and 37(c)(1). Neither party has cited any case law addressing these rules. Rule 26(a)(2) controls the timing and scope of disclosure of expert discovery. A party using a retained expert is required to provide a written report containing, among other things, "any exhibits to be used as a summary of or support for the opinions." Fed. R. Civ. P. 26(a)(2)(B). The expert's report must be disclosed "at the times and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2)(C).

The deadline for disclosure of Defendants' experts and their reports was February 3, 2005. See Doc. 113. Tandy's report is dated January 2, 2005. Plaintiffs deposed Tandy on February 21, 2005. Tandy took the videos on June 3, 2005, over ten years after the Lekkas accident. On July 12, 2005, Defendants produced the videotapes prepared by Tandy to Plaintiffs' counsel.

Defendants claim that the videos were timely disclosed because illustrative exhibits "are not technically due until trial exhibits are due." Defs' Opp. at 11. Defendants are mistaken. Demonstrative evidence which summarizes or supports an expert's opinions must be contained in the expert's report. See Salgado v. Gen. Motors Corp., 150 F.3d 735, 741 n.6 (7th Cir. 1988) (noting that the category of "exhibits to be used as a summary of or support for the [expert's] opinions" "encompasses demonstrative evidence which summarizes or supports the expert's opinion."). Rule 26(a)'s disclosure requirements contain no exception for demonstrative evidence which summarizes or supports an expert's opinion.

The videotapes prepared by Tandy were subject to mandatory disclosure under Rule 26(a)(2)(B). Defendants state that the "videotapes illustrate Mr. Tandy's expert opinions pertaining to the subject Montero's handling and stability." Defs' Opp. at 4. Defendants further explain that the videos "very clearly illustrate Mr. Tandy's primary causation opinion that: 'the likely cause of

the accident was that Mr. Lekkas drove his vehicle into the median then failed to maintain control of his vehicle by steering abruptly." Id. Defendants emphasize that the videos do not express any new opinions or contain new evidence even though they were prepared after Tandy's deposition in this case. The Court has no trouble concluding that Tandy's video demonstrations are a "summary of or support for" his opinions.

Rule 37(c)(1) sets out the framework for deciding whether a party's evidence should be excluded if the party fails to comply with a court's order under Rule 26(a). "[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." Salgado, 150 F.3d at 742. Four factors guide the trial court's determination of whether exclusion is appropriate: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. David v. Caterpillar, 324 F.3d 851, 857 (7th Cir. 2003). Sanctions for a discovery violation should be proportionate to the violation. Salgado, 150 F.3d at 740.

With these principles in mind, the Court considers whether Defendants' failure was justified or harmless. The only justification offered for Defendants' failure to timely disclose the videotapes was their mistaken belief that the videotapes "were not technically due" until the filing of the pretrial order. Defendants' misunderstanding of the requirements of Rule 26(a) does not provide substantial justification for their failure to meet its disclosure requirements. Musser v. Gentiva Health Services, 356 F.3d 751, 758 (7th Cir. 2004) (stating "[a] misunderstanding of the law does not equate to a substantial justification for failing to comply with the disclosure deadline.").

Moving on to the harmless inquiry, the Court is unpersuaded by Defendants' assertion that Plaintiffs cannot claim surprise. The fact that Plaintiffs deposed Tandy and knew that Tandy had visited the accident scene and conducted drive-by testings/demonstrations prior to his deposition does not undermine Plaintiffs' claim of surprise regarding the June 3, 2005 videos or cure the deficiency in Tandy's report. If the videos of Tandy's demonstrations had been timely disclosed, Plaintiffs would have examined Tandy about the contents of the videos, developed relevant cross-examination strategy, and likely prepared rebuttal expert testimony.

The Court finds, however, that the violation of Rule 26(a) was harmless and that the sanction of excluding the videos is not necessary in order to prevent undue prejudice to Plaintiffs. There is no evidence that Defendants' failure to timely produce the videotapes was the result of wilfulness or bad faith, and any prejudice could be cured in this situation. The trial is set for March 6, 2006 and is still a long way off. The final pretrial order is due on December 2, 2005, approximately a month from now. Because the trial date would not be impacted, the Court would be willing to mitigate any harm by allowing Plaintiffs time to redepose Tandy regarding the videos at Defendants' expense and to develop any rebuttal expert testimony regarding the videos.

Notwithstanding the ability to mitigate any prejudice here, the Court finds that reopening discovery is not necessary because Plaintiffs' second argument has merit. Plaintiffs alternatively argue that the videos are "extremely prejudicial, misleading and inaccurate because the tapes are performed under completely unknown circumstances." Pls' Motion at 3-4. Plaintiffs' argument appears to be premised on Federal Rule of Evidence 403, although no reference is made to Rule 403. Rule 403 allows a court to balance the probative value of relevant evidence with the harm likely to result from its admission. Relevant evidence may be excluded where the "probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Although Plaintiffs do not explicitly contend that the videos are irrelevant, the Court believes that the relevance of the videos turns on whether the conditions under which the videos were filmed were substantially similar to those that existed at the time of the accident.

"As a general rule, the proponent of experiments must establish a foundation for the evidence by demonstrating that the experiments were conducted under conditions that were similar to those that existed at the time of the accident." Nachtsheim v. Beech Aircraft Corp., 847 F.2d 1261, 1278 (7th Cir. 1998). The First Circuit has noted that:

> The concern lies not with use of tape or film (the issue would be largely the same if the jurors were taken to the test track for a live demonstration) but with the deliberate recreation of an event under staged conditions. Where that recreation could easily seem to resemble the actual occurrence, courts have feared that the jurors may be misled because they do not fully appreciate how variations in the surrounding conditions, as between the original occurrence and the stage event, can alter the outcome.

Fusco v. General Motors Corp., 11 F.3d 259, 263-64 (1st Cir. 1993). On the other hand, "'demonstrations of experiments used to merely illustrate the principles informing an expert opinion do not require strict adherence to the facts.'" Nachtsheim, 847 F.2d at 1278. "[C]ourts may admit such demonstrations so long as they are offered to illustrate scientific principles rather than as re-enactments." Crossley v General Motors Corp., 33 F.3d 818, 822 (7th Cir. 1994) (upholding admission of videotape of a study of rollover sequences of a different model vehicle and different conditions than those that existed in the case to assist defense expert in explaining the "complicated and sometimes counterintuitive aspects" of rollovers dynamics rather than to reenact the accident or the cause of the accident).

In differentiating between recreations and illustrations of general scientific principles, "the critical point is not one of labels." Fusco, 11 F.3d at 264. The key question is "whether the demonstration is sufficiently close in appearance to the original accident to create the risk of misunderstanding by the jury, for it is that risk that gives rise to the special requirement to show similar conditions." Id; see also McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1402 (8th Cir. 1994) (noting that "[t]he closer the experiment gets to simulating the accident, the more similar the conditions of the experiment must be to the accident conditions."). The First Circuit has observed that "[s]cientific principles, when demonstrated in a fairly abstract way, are quite unlikely to be confused with the events on trial." Fusco, 11 F.3d. at 264 n.5.

Plaintiffs argue that Tandy's videos are not simply demonstrative of a scientific concept or principle. Plaintiffs contend that the video demonstrations reenact what Lekkas did in operating the vehicle just before it rolled over. Plaintiffs point out that the original roadway has been paved over and there is no confirmation that the conditions, dimensions, slope and substance of the shoulder is the same as it existed on the date of the accident. Plaintiffs also state that numerous factors play a role in determining the reliability of a reconstruction, including the particular vehicle used, the size and type of tires used, and the co-efficient of friction between the tires and the roadway.

Defendants say that the videos are not reconstructions. Defendants describe the videos as follows: "In the videos, Mr. Tandy is shown driving an exemplar Montero southbound on Interstate 55 near the accident scene. The videos show Mr. Tandy driving the Montero's driver-side wheels off the paved roadway and onto the unfinished gravel median like Antonios Lekkas did just before the accident. Then, Mr. Tandy demonstrates a variety of methods by which an operator of the Montero can safely resume driving on the paved highway, or safely slow the vehicle to a stop,

without rolling the vehicle over." Defs' Opp. at 2. Defendants explain that the "videos demonstrate scientific principles associated with Mr. Tandy's expert opinions, including handling and stability aspects of the subject Montero while traveling at highway speeds on and off the paved portion of southbound Interstate 55." Id. at 8. Defendants state that Tandy "will use the videos to illustrate his handling and stability opinions, and to show what Mr. Lekkas could have done to avoid the accident." Id. Defendants further state that the videos "illustrate Mr. Tandy's primary causation opinion that: 'the likely cause of the crash was that Mr. Lekkas drove his vehicle onto the median then failed to maintain control of his vehicle by steering abruptly.'" Id. at 4.

The Court has viewed the videotapes. On a spectrum, Tandy's video demonstrations are closer to simulating the events at issue than demonstrating abstract scientific principles. It is clear that Tandy's video demonstrations are more than a simple demonstration of general scientific principles in the abstract. Compare Zurzolo v. General Motors Corp., 69 F.R.D. 469, 473 (E.D. Pa. 1975) (holding defendant need not show similarity where motion picture to be shown to the jury in conjunction with defense expert's testimony portrayed the expert's testimony regarding Newton's laws of motion). Moreover, Defendants have not spelled out what general scientific principle is illustrated by the videos. See Hinds v. General Motors Corp., 988 F.2d 1039, 1041 (10th Cir. 1993) (upholding district court's exclusion of GM's crash test which was not substantially similar to the accident in question, "particularly when GM offered no articulable engineering principles which the test was designed to demonstrate.").

Defendants point out that the videos are obviously not exact representations of the accident involved in this case because "Tandy's vehicle remains in control throughout the entire video, while the Lekkas vehicle rolled over during the accident." Defs' Opp. at 4-5. Even though the videos do

not strictly reenact the accident, the videos resemble a recreation. The videos purport to replicate the cause of the accident from Defendants' point of view by pointing out "what Mr. Lekkas could have, and should have, done." Defs' Opp. at 6. Tandy will use the videotapes to suggest that Lekkas' negligence caused the accident, not a defective design. What a driver allegedly did to cause a particular accident is clearly within the realm of accident reconstruction.

Even viewing Tandy's videos as illustrating the Montero's normal handling and stability characteristics at highway speeds on and off a paved portion of an interstate, the videos look very much like a recreation of the events in this case up to the point before the vehicle rolled over. The Court believes the jury would likely view the videos as a reconstruction of the cause of the accident according to Defendants' theory, rather than as an illustration of general scientific principles. The video demonstrations depict the same type of vehicle driving on the interstate near the accident scene. The videos show Tandy driving the Montero's driver-side wheels off the paved roadway and onto the unfinished gravel median "like Antonios Lekkas did just before the accident." Defs' Opp. at 2. Tandy intends to use the demonstrations to explain Defendants' theory of causation of this particular accident. These facts create the impression of reenacting the events giving rise to the accident but with a different end result. The Court finds that the videos are sufficiently close in appearance to the events giving rise to this case that they could be viewed as reconstructions by the jury.

Defendants thus bear the burden of demonstrating similarity between Tandy's video demonstrations and the conditions that existed at the time of the accident. Nachtsheim, 847 F.2d at 1278. Defendants have not offered any evidence establishing a foundation of similarity. Without a showing of similarity, the Court finds that the videos are just similar enough to the events at issue

to confuse the jury and leave the jurors with the prejudicial impression of a recreation of the actual occurrence according to Defendants' theory of causation. Because Defendants have not met their burden, the Court concludes that the danger of confusion substantially outweighs the probative value of the videos.

## CONCLUSION

For these reasons, Plaintiffs' Motion to Strike and Bar Defendants' Untimely Videotapes Prepared by Expert, Don Tandy [155-1] is granted. The videotapes prepared by Tandy on June 3, 2005 are excluded. Witnesses and counsel are prohibited from mentioning the videotapes at the trial of this case.

ENTER:

*Nan R Nolan*

**Nan R. Nolan**
**United States Magistrate Judge**

**Date: November 3, 2005**